48 F.3d 1222
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 UNITED STATES of America, Plaintiff/Appellee,
v.
A.J. JONES, also known as, Andrew Sonny Jones, also known
as, Andrew Sonny Jones, Jr., Defendant/Appellant.
 No. 94-1948.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 28, 1995.
Decided March 2, 1995.
 
 Appeal from the United States District Court for the Eastern District of Wisconsin, No. 93 CR 222; Rudolph T. Randa, Judge.
 E.D. Wis.
 APPEAL DISMISSED.
 Before BAUER, COFFEY and FLAUM, Circuit Judges.
 
 ORDER
 
 1
 A.J. Jones pleaded guilty to four counts of bank robbery, committed in violation of 18 U.S.C. Sec. 2113(a). The district court sentenced Jones to 137 months' imprisonment on each count, with all four sentences to run concurrently. Jones's appointed counsel filed a notice of appeal followed by a motion to withdraw as counsel, which was granted by the district court. On appeal, Jones's newly appointed counsel also filed a motion to withdraw and an Anders brief in which he stated his belief that an appeal would be frivolous. Anders v. California, 386 U.S. 738 (1967); United States v. Edwards, 777 F.2d 364 (7th Cir.1985). Pursuant to Circuit Rule 51(a), Jones was informed of his right to respond; which he did. We will grant the motion to withdraw only if we are convinced that the possible issues for appeal are "groundless in light of legal principles and decisions." United States v. Eggen, 984 F.2d 848, 850 (7th Cir.1993) (citing McCoy v. Court of Appeals, 486 U.S. 429, 436 (1988)). Our independent review of the record reveals that there are no issues for appeal that can be considered non-frivolous. However, both Jones and counsel raise various issues as potential grounds for appeal.
 
 I. Issues Concerning the Plea Agreement
 
 2
 Jones and counsel raise the issue of whether the plea agreement was entered into knowingly and voluntarily. Having independently reviewed the transcript of the plea hearing, we conclude that any challenge to the voluntariness of the guilty plea would be groundless and therefore frivolous.
 
 
 3
 The change of plea hearing must be examined to determine whether Jones's guilty plea satisfied the requirements of Fed.R.Crim.P. 11. The district court conducted a colloquy with Jones and accepted the guilty pleas. The district court first established that Jones was competent. (Plea Tr. at 3-5, 11). Then, the district court explained Jones's right to trial by jury, Jones's right not to testify, and the government's burden of proof. (Plea Tr. at 5). The district court also established that Jones understood that it would be the district court, and not the government, that would determine his sentence. (Plea Tr. at 6). The district court determined that Jones had actually committed the elements of the crime. (Plea Tr. at 6-11). The district court ensured that Jones understood the possible maximum sentence. (Plea Tr. at 14). Despite this colloquy, the district court did not specifically advise Jones under Rule 11(e)(2) that Jones had no right to withdraw his guilty plea, even if he was dissatisfied with his sentence.
 
 
 4
 Rule 11(e)(2) reads, in relevant part: "If the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise defendant that if the court does not accept the recommendation or request [for a particular sentence] the defendant nevertheless has no right to withdraw the plea." Fed.R.Crim.P. 11(e)(2). A plea agreement made under subdivision (e)(1)(B) will: "make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding on the court." Fed.R.Crim.P. 11(e)(1)(B). Because Jones's plea agreement allows both parties to recommend a sentence, but that recommendation is not binding on the court, the plea agreement is of the type specified under Rule 11(e)(1)(B). Hence, the admonition required by Rule 11(e)(2) is applicable to Jackson.
 
 
 5
 Rule 11(e)(2) "assures that the accused's decision to plead guilty is fully informed by disabusing the defendant of any mistaken notions he may have obtained during the plea bargaining process." United States v. Diaz-Vargas, 35 F.3d 1221, 1224 (7th Cir.1994). "As a rule, noncompliance with Rule 11 constitutes reversible error in this circuit." United States v. Bennett, 990 F.2d 998, 1004 (7th Cir.1993) (quoting United States v. Peden, 872 F.2d 1303, 1306 (7th Cir.1989)). However, Rule 11(h) provides a harmless error exception: "Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." Fed.R.Crim.P. 11(h). "[T]he relevant inquiry focuses on both how that information would have likely affected his decision to accept or reject a plea, and what additional information a special Rule 11(e)(2) admonition would have added to the defendant's knowledge." Diaz-Vargas, 35 F.3d at 1224 (citing United States v. Padilla, 23 F.3d 1220, 1222 (7th Cir.1994)).
 
 
 6
 In Jones's case, the failure to provide a specific Rule 11(e)(2) admonition was harmless error. Jones plea agreement provides, "that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court." (Plea Ag. at p 6(e)). At the plea hearing, Jones indicated that he was aware of the finality of the plea. (Plea Tr. at 18) ("I just want to make sure that down the road I don't end up regretting what I did here."). Additionally, at sentencing, Jones, who was dissatisfied with the work of his newly appointed counsel, acknowledged that his plea could not be withdrawn. (Sentencing Tr. at 10). Because Jones understood that his guilty plea could not be withdrawn, it was harmless error for the district court to fail to specifically advise him of this fact.
 
 
 7
 In Jones's response to his counsel's motion to withdraw, Jones raises the issue of whether his plea was voluntary. At the plea hearing, the district court asked Jones whether his plea of guilty was voluntary. Jones responded that it was. Later in the hearing however, Jones expressed reservations about the plea agreement, and was concerned that he might face the maximum penalty on all four counts. Apparently, Jones's initial counsel, who withdrew by permission of the district court, had told Jones that he might face between 92 and 115 months' imprisonment for his crimes. When the district court advised Jones of the possible maximum penalties, after the guilty plea, Jones balked.[1] However, the district court, the government, and Jones's counsel all assured Jones that he would not receive the maximum, but instead a sentence from within the applicable range dictated by the sentencing guidelines. The district court offered Jones the chance to withdraw his plea, and discuss the agreement further with his attorney, but Jones chose not to. Jones expressed that he had an understanding of the plea agreement, and that he wished to plead guilty. (Plea Tr. at 18). Hence, although Jones was initially confused about the sentencing aspect of the plea agreement, the district court ensured that Jones understood the agreement before accepting his plea of guilty.
 
 II. Sentencing Issues
 
 8
 Review of a sentence imposed under the guidelines is limited to cases where the sentence is (1) in violation of the law, (2) a result of the incorrect application of the guidelines, (3) greater than the sentence specified in the applicable guideline range, or (4) plainly unreasonable and imposed for an offense for which there is no guideline. 18 U.S.C. Sec. 3742(a)(1)-(4). Thus, "[a]bsent an error of law or a misapplication of the guidelines, this court lacks jurisdiction to review sentences within the appropriate guidelines range." United States v. Solis, 923 F.2d 548, 551 (7th Cir.1991). To establish whether Jackson's sentence meets any of the criteria of review, we must decide first whether Jackson was sentenced in compliance with the United States Sentencing Guidelines.
 
 A. Application of the Sentencing Guidelines
 
 9
 Our independent review reveals that the guidelines were correctly applied to Jones's case. Jones pleaded guilty to four counts of bank robbery, in violation of 18 U.S.C. Sec. 2113(a). Pursuant to U.S.S.G. Sec. 2B3.1(a), the base offense level for robbery is 20 points. Because Jones robbed financial institutions, the offense level for each count is increased by two points. U.S.S.G. Sec. 2B3.1(b)(1)(a). In three of the four robberies, Jones made express threats of death. Hence, the offense level for these three counts is increased by two points. U.S.S.G. Sec. 2B3.1(b)(2)(F). In sum, defendant Jones has three counts with an offense level of 24, and one count with an offense level of 22. The combined offense level is determined under U.S.S.G. Sec. 3D1.4. Under Sec. 3D1.4, the total offense level for the four counts is 28.
 
 
 10
 Because Jones demonstrated an acceptance of responsibility, he is entitled to a two point deduction pursuant to Sec. 3E1.1(a). Jones is further entitled to a one point deduction for his timely plea, pursuant to Sec. 3E1.1(b)(2). Thus, Jones's final combined offense level is calculated to be 25. We find no possible error in these findings. Additionally, the PSR calculated Jones's criminal history points to be 23, establishing a criminal history category of VI.
 
 
 11
 Our independent review reveals that the guidelines were correctly applied in Jones's case. Hence, his sentence does meet any of the criteria for review, and an appeal would be groundless.
 
 B. Compliance with Rule 32
 
 12
 We must also determine whether Jones was sentenced in compliance with Fed.R.Crim.P. 32. Rule 32(a)(1) requires that the court timely provide the defendant with a copy of the presentence report and afford counsel an opportunity to state objections to the report and comment on matters relating to the sentence. Jones's counsel did receive the report prior to the hearing. Counsel did not object to any factual findings contained in the report. The court addressed Jones personally and allowed him to add any comments. Fed.R.Crim.P. 32(a)(1)(C). Although the district court did not comply with Rule 32(a)(2) and directly inform Jones of his right to appeal the sentence, Jones was aware of his right to appeal and filed a timely appeal. Hence, there is no appealable error on this issue.
 
 III. Effective Assistance of Counsel
 
 13
 Both Jones and his appointed counsel raise the potential issue of ineffective assistance of counsel who represented Jones through the plea hearing, as well as Jones's new counsel appointed for the sentencing hearing. To succeed on an ineffective assistance of counsel claim, Jones must show both that his counsel's representation fell below an objective standard of reasonableness, and that any deficiencies in counsel's performance caused prejudice. Strickland v. Washington, 466 U.S. 668, 688-92 (1984). However, "[m]isinformation from a defendant's attorney, such as an incorrect estimate of the offense severity rating, standing alone, does not constitute ineffective assistance of counsel." Barker v. United States, 7 F.3d 629, 633 (7th Cir.1993) (citing United States v. Arvanitis, 902 F.2d 489, 494 (7th Cir.1990)), cert. denied, 114 S.Ct. 939 (1994). To establish prejudice, Jones would have to show that "there is a reasonable probability that, but for counsel's errors, [Jones] would not have pleaded guilty and would have insisted on going to trial." Barker, 7 F.3d at 633 (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).
 
 
 14
 Counsel apparently informed Jones that he would most likely be subject to a sentencing range of 92 to 115 months. The PSR calculated a 110 to 137 month range. Jones was advised at his plea hearing that the estimates were not binding, and that the court would determine the applicable range and final sentence. In advising Jones to plead guilty to the four counts, and receive a valuable three point deduction, it appears that Jones's counsel neither fell below an objective standard of reasonableness, nor caused any prejudice to Jones. Although Jones was dissatisfied with his newly appointed counsel at the sentencing hearing, that attorney's performance likewise did not fall below the constitutional standard of effectiveness, and Jones perfected a timely appeal. Hence, we conclude that an argument on appeal that Jones's appointed counsel was constitutionally deficient would be groundless, and therefore frivolous.
 
 IV. Mental Capacity
 
 15
 Counsel raises the potential issue of whether Jones's mental competence warranted a downward departure from the guidelines. Jones has psychological problems, and apparently suffers from a behavior disorder. Section 5K2.13 of the sentencing guidelines provides that a downward departure may be given where "the defendant committed a nonviolent offense while suffering from significantly reduced mental capacity not resulting from the use of drugs or other intoxicants...." U.S.S.G. Sec. 5K2.13. However, Jones committed a violent offense, bank robbery in which he made an express threat of death. Thus, the departure would be inapplicable to Jones. Additionally, there is no claim, or evidence in the record before us, that Jones's mental state would have constituted a defense to the mental state required for the crime he was charged with. Hence, with regard to Jones's mental capacity, there are no non-frivolous issues for appeal.
 
 
 16
 Counsel's motion to withdraw is therefore GRANTED and Jones's appeal is DISMISSED.
 
 
 
 [1]
 When told of the maximum penalties he faced, Jones stated:
 Your Honor, I don't have an understanding with this right now. I would like to talk with my attorney. I don't have an understanding because I came down here ready and willing to plead to this ... and ... [t]hat I would only have to deal with the 92 months or the 115 months. And now that this is brought out, this creates a problem to me, because now they saying that the judge doesn't have to go along with the plea, that he can throw the plea to the side and still sentence me to eighty years, if that's what he wishes. I didn't have that understanding at the time of signing this.
 (Plea Tr. at 15).