UNITED STATES of America,
Plaintiff–Appellee,

v.

Juventino HERRERA–RIVERA, also
known as Dino, Tito and Tino,
Defendant–Appellant.

No. 91–2831.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 8, 1994.

Decided May 25, 1994.

As Amended June 3, 1994.

Helene B. Greenwald, Dean J. Polales, Asst. U.S. Attys., Debra Riggs Bonamici (ar-

gued), Office of the U.S. Atty., Criminal Div., Chicago, IL, Barry R. Elden, Asst. U.S. Attys., Office of the U.S. Atty., Criminal Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

James M. Geraghty (argued), Chicago, IL, for defendant-appellant.

Before PELL, WOOD, JR., and ESCHBACH, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

On May 5, 1986, a grand jury issued a third and superseding indictment against Defendant Juventino Herrera–Rivera and ten other individuals for violating numerous drug and conspiracy laws. Herrera–Rivera was tried jointly with seven other members of the alleged conspiracy. Following a two month long trial, a jury found the eight defendants guilty of all charges except for a 21 U.S.C. § 843 charge against a defendant not involved in this appeal. Herrera–Rivera now appeals his convictions for conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846, RICO 18 U.S.C. § 1962(c), for being a part of a Continuing Criminal Enterprise ("CCE") 21 U.S.C. § 848, distribution of controlled substances,[1] and using a telephone to distribute controlled substances. Herrera–Rivera presents three arguments for reversal: that he was denied effective assistance of counsel; the evidence is insufficient to support the CCE conviction; and the district court improperly sentenced the defendant for his CCE and conspiracy convictions.[2] As discussed below, these claims have no merit and we affirm.

## BACKGROUND

Relevant to this appeal are the facts surrounding the actions of defendant's attorney before, during, and after trial. Herrera–Rivera retained Mark Krasnow, a criminal lawyer from Miami. Krasnow represented the defendant at several pretrial proceedings, but was involved in another trial in Florida for several months directly preceding this trial which was scheduled to begin on April 14. Because of this other trial, Krasnow filed a motion for a continuance on April 1, 1986. The trial was delayed several times while Judge Kocoras and all eight defendants waited for Krasnow to become available. When the Florida trial eventually concluded in the middle of the week of May 5, 1986, Judge Kocoras rescheduled the trial date for May 12, 1986, and had his courtroom deputy inform Krasnow's office of this new date. When Krasnow did not seek a continuance or appear for trial on May 12, Judge Kocoras issued a bench warrant for his arrest. The next day United States marshals travelled to Florida where they arrested Krasnow and brought him forthwith to Chicago where he was past due.

Judge Kocoras held criminal contempt proceedings on May 14, 1986. During the contempt proceedings Krasnow testified extensively regarding his rigorous trial schedule before other judges in Florida who would not allow him to leave prematurely. However, at the hearing Krasnow stated "I am prepared to try this case." He had been retained to represent the defendant months before. Krasnow explained that when his Florida trial ended, he knew that this trial was scheduled to begin on May 12, 1986, but did not appear because he assumed Judge Kocoras had several trials scheduled to begin on the same day and that this trial would not begin until later in the week. He assumed incorrectly and Judge Kocoras deservedly held him in contempt of court. Judge Kocoras concluded that Krasnow should have known his presence was required in Chicago

---

**1.** Appellant was convicted of distributing cocaine or heroin on fourteen separate occasions.

**2.** On April 2, 1991, the district court granted the defendant's motion for leave to file a late appeal under 28 U.S.C. § 2255. The basis for allowing the late appeal was the defendant's testimony that he had told his attorney to file a notice of appeal, his attorney agreed, and then failed to file such notice. The government appealed and we remanded for the limited purpose of allowing the district court to conduct such proceedings as necessary to determine when Herrera–Rivera filed a timely notice of appeal in light of *Houston v. Lack,* 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). The district court held an evidentiary hearing on October 16, 1992, and held that appellant had filed his notice of appeal on time.

*immediately* after his other trial finished. He stated:

> I think ... that you decided for whatever reason—the reason that your Florida cases were more important than this case—that you were not going to show up here and you were going to show up here on your good time. I have that deep conviction and belief and I think the record amply supports that conclusion; and because of that, and because I find that you acted intentionally—you decided to give your other business priority and decided not to pay attention to this case—I think you acted with the requisite intent for a criminal contempt finding and I so find, Mr. Krasnow.
>
> In addition to that, I find your failure to appear here not only seriously inconvenienced all of the parties, but impeded the administration of justice, and that is what happened here. We were all sitting here waiting for you, at some great expense, I might add, and inconvenience.

> . . . . .

> So for all of those reasons, I do, in fact, find you in criminal contempt of this Court for your deliberate and wilful failure to appear for trial this Monday, as you were required to do, as you had more than abundant notice of the fact of that trial and its starting date and you deliberately chose not to do that. I do find you in contempt of court for that purpose.

It is apparent in the record that Judge Kocoras fully considered Krasnow's excuses and was no more impressed with them than we are. He sentenced Krasnow to fifteen days in the custody of the Attorney General and fined him $1,551.44 (cost of fifty jurors who appeared on May 12), but stayed the sentence until after trial.

Once the trial began, the government presented evidence of fourteen alleged sales of narcotics totalling almost ten pounds by Herrera–Rivera to undercover officers. The evidence consisted mainly of testimony from Raleigh Lopez, a Drug Enforcement Administration ("DEA") agent, numerous tapes of telephone conversations, and physical surveillance. All of this evidence was collected during an extensive undercover and surveillance operation that portrayed an elaborate drug conspiracy involving the defendant. After hearing the testimony and reviewing the evidence, the jury convicted Herrera–Rivera on all counts of the indictment.

## ANALYSIS

Herrera–Rivera presents three issues for our review: (1) whether he received effective assistance of counsel; (2) whether the evidence was sufficient to support a CCE conviction; and (3) whether the district court properly sentenced the defendant for his CCE and conspiracy convictions. We review each of these arguments in turn.

### I. Ineffective Assistance of Counsel

In reviewing whether the defendant received effective assistance of counsel, we are bound by the decision in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and begin strongly presuming counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690, 104 S.Ct. at 2066. The defendant must demonstrate (1) that the attorney's representation fell below an objective standard of reasonableness, and (2) that but for the attorney's inadequate performance the result of the proceedings would have been different (the prejudice prong). *Id.* at 690–94, 104 S.Ct. at 2066–68; *United States v. Levine,* 5 F.3d 1100, 1108 (7th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1224, 127 L.Ed.2d 569 (1994); *United States v. Delgado,* 936 F.2d 303, 310 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 972, 117 L.Ed.2d 137 (1992).[3] Herrera–Rivera's arguments do not satisfy this test.

---

**3.** Defendant argues in his reply brief that once the district judge found Krasnow in criminal contempt of court, Krasnow had a conflict of interest with his client which presumptively satisfies the prejudice prong of the *Strickland* test. *See United States v. Cronic,* 466 U.S. 648, 658–62,

104 S.Ct. 2039, 2046–48, 80 L.Ed.2d 657 (1984). The conflict is allegedly between the attorney's interest in avoiding a severe sentence on the contempt citation and the client's interest in receiving a vigorous defense. *United States v. Logan,* 998 F.2d 1025, 1033–37 (D.C.Cir.) (Mikva, J.

To meet the first part of the test, the defendant must identify specific acts or omissions that fell outside the wide range of professionally competent assistance. *Dugan v. United States*, 18 F.3d 460, 464 (7th Cir. 1994); *Lilly v. Gilmore*, 988 F.2d 783, 785 (7th Cir.), *cert. denied*, — U.S. ——, 114 S.Ct. 154, 126 L.Ed.2d 116 (1993); *Delgado*, 936 F.2d at 310. Herrera–Rivera points to the circumstances surrounding the efforts required to get his attorney to attend the trial and contends that Krasnow neglected this case and was unprepared to competently defend him. In support of this argument the defendant emphasizes Krasnow's rigorous trial schedule and the fact that Krasnow appeared at trial only after the court issued a bench warrant for his arrest and had him forcefully brought to Chicago.

At first glance defendant's argument is intriguing because it seems logical to assume that where the district court is required to have an attorney arrested and brought to court just to defend his client, the attorney may not be fully prepared to put on the best possible defense for his client. It is almost routine for lawyers to have difficult schedules. A claimed hectic schedule, however, does not automatically mean that the attorney was not prepared and did not provide competent legal representation. "All attorneys must make decisions about how to allocate their scarce lawyerly resources among the many clients they may represent at any given time. Evaluating decisions is not within the province of this court. We ask only whether [the lawyer involved] performed adequately in *this* case." *United States v. Flores*, 5 F.3d 1070, 1080 (7th Cir. 1993), *cert. denied*, — U.S. ——, 114 S.Ct. 884, 127 L.Ed.2d 79 (1994). Here the case had been pending for more than one year and there is nothing in the record suggesting that Krasnow never met with his client nor prepared for trial.

Perhaps realizing that this general assertion would be insufficient to show ineffective assistance of counsel, Herrera–Rivera asserts that Krasnow rendered inadequate representation when presenting his opening statement; presenting evidence on the CCE charge; in tendering jury instructions on the conspiracy charge; and when he failed to timely file the notice of appeal.

### A. Opening Statement

Defendant argues: "One need look no further then [sic] his opening statement wherein not only did he incorrectly refer to his client, but also he failed to make any reference whatsoever to any facts at issue or matters of controversy with regard to the case." App.Br. at 10. During the opening statements, Krasnow referred to Herrera–Rivera simply as "Herrera." Defendant points to this one slight error but does not suggest how this may have confused or misled the jury. The defendant also argues that Krasnow's opening statement was too general because he did not delve deeply into the facts of the case. Krasnow chose not to discuss the many facts about the alleged drug deals at issue and instead focussed on the different methods a jury may use to analyze the different types of evidence to be introduced during trial. Krasnow may have decided not to discuss the extensive and complex facts of the numerous drug deals because he believed that the evidence was overwhelming. We will not second-guess an attorney's trial strategy particularly where we strongly presume "that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, and the defendant has not shown how the alleged error prejudiced his defense.

### B. Continuing Criminal Enterprise Count

Specific to the CCE charge, Herrera–Rivera states that Krasnow should have (1) con-

---

dissenting), *cert. denied*, — U.S. ——, 114 S.Ct. 569, 126 L.Ed.2d 469 (1993). Of course the counterargument is that the attorney's interest is to impress the judge by asserting the best possible defense. However, because this argument was not raised until the reply brief, it is waived.

*Bobo v. Kolb*, 969 F.2d 391, 400 (7th Cir.1992); *Wilson v. O'Leary*, 895 F.2d 378, 384 (7th Cir. 1990); *United States v. Goodwin*, 770 F.2d 631, 640 n. 4 (7th Cir.1985), *cert. denied*, 474 U.S. 1084, 106 S.Ct. 858, 88 L.Ed.2d 897 (1986).

ducted a defense showing that Herrera–Rivera was not a "kingpin," and (2) tendered an instruction requiring the jury to specify the five individuals whom they determined to have been managed by the defendant, and (3) introduced evidence showing that Herrera–Rivera did not derive significant resources from the criminal enterprise. To the extent that these arguments question whether the government introduced sufficient evidence to support the convictions, we discuss these issues in section II below.

■ We will not review Krasnow's defense of Herrera–Rivera on the CCE count when the defendant has not identified any specific evidence that could have and should have been raised to support the defense. As discussed below, the government introduced sufficient evidence for the jury to convict Herrera–Rivera on the CCE charge. Herrera–Rivera does not identify any witnesses who could have been called, questions that could have been asked, objections or motions that should have been made, or evidence that should have been introduced to demonstrate that he was not a kingpin. Vague or general allegations are insufficient to satisfy the first prong of the *Strickland* test. In the absence of any such specific acts or omissions, we find that the defendant received effective assistance of counsel on this point.

■ Next defendant argues that Krasnow should have proposed a jury instruction asking the jury to identify the specific individuals managed by the defendant. The defendant, however, was not entitled to this instruction because the CCE statute does not require that the five individuals be identified. Each juror needed only to believe that the defendant supervised enough people in order to convict. *United States v. Markowski*, 772 F.2d 358, 364 (7th Cir.1985), *cert. denied*, 475 U.S. 1018, 106 S.Ct. 1202, 89 L.Ed.2d 316 (1986); *United States v. Beverly*, 913 F.2d 337, 352–53 (7th Cir.1990), *cert. denied*, 498 U.S. 1052, 111 S.Ct. 766, 112 L.Ed.2d 786 (1991).

■ As to the "substantial resources" element, the defendant argues that Krasnow should have introduced evidence showing that Herrera–Rivera did not obtain substantial resources from his participation in the conspiracy, but does not identify exactly what evidence should have been introduced by Krasnow. Again, as discussed below, the government met its burden by introducing sufficient evidence that the defendant derived substantial resources from the drug operation. Because the defendant does not identify any specific evidence refuting this conclusion, we find no error in Krasnow's defense of the defendant on the CCE charge.

### C. Conspiracy Charge

■ On the conspiracy conviction, Herrera–Rivera argues that the evidence presented at trial showed a "material variance" existed between the conspiracy alleged in count I of the indictment and the two conspiracies established at trial. He also suggests that Krasnow should have tendered a jury instruction on the issue of whether there were multiple conspiracies. Defendant does not specify what evidence established that there were multiple conspiracies or where the "material variance" occurred, nor does he show that if there were two conspiracies he was not a member of both conspiracies. *See United States v. Alvarez*, 860 F.2d 801, 820 (7th Cir.1988). Again, general or vague allegations of error are insufficient to rebut the presumption of competent representation. The evidence supports the jury's conclusion that one conspiracy existed, the defendant has not shown that he was entitled to a multiple conspiracy instruction, and accordingly we dismiss this argument. *See United States v. Townsend*, 924 F.2d 1385, 1389 (7th Cir.1991).

### D. Notice of Appeal

■ Herrera–Rivera's fourth and final argument suggests that he was denied effective assistance of counsel when Krasnow failed to file a timely appeal. This argument too must fail because no prejudice resulted as the district court allowed the defendant to file an out-of-time appeal under 28 U.S.C. § 2255.

We conclude that Krasnow's representation of Herrera–Rivera was well within the constitutional standards for legal representation. We note that at the end of trial Judge

Kocoras specifically stated that "the conduct of the attorneys in this case comported with the highest standard of this court—and this court does have high standards" and that "every defendant in this case got the best that they could get from their appointed and retained counsel." Tr. at 6646–47. Although the trial judge's comments do not automatically mean that Krasnow provided competent representation, they support our conclusion that the *Strickland* test has not been satisfied.

## II. Sufficiency of the Evidence to Support CCE Conviction

█ Herrera–Rivera argues that the evidence introduced by the government at trial is insufficient to support his conviction on the CCE count. The thrust of his argument is that he was not a "kingpin" in the drug conspiracy because he did not exercise supervisory control over five or more persons and did not receive substantial income from the enterprise.

█ When reviewing a claim of insufficient evidence, we consider the evidence in the light most favorable to the government and ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). We will sustain the jury's verdict if it is supported by substantial evidence. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *Alvarez,* 860 F.2d at 812. We will reverse " 'only where the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt....' " *United States v. Easley,* 994 F.2d 1241, 1247 (7th Cir.1993), quoting *United States v. Tipton,* 964 F.2d 650, 657 (7th Cir.1992); *United States v. Goines,* 988 F.2d 750, 758 (7th Cir. 1993). This standard does not permit us to reweigh the evidence or to reassess the credibility of witnesses. *United States v. DePriest,* 6 F.3d 1201, 1206 (7th Cir.1993).

█ Even though the evidence showed that Rudolpho Herrera–Medina was a head or "kingpin" of the drug conspiracy, the jury could have properly found the defendant guilty on the CCE charge so long as all the evidence supports each of the statutory elements. "Kingpins are not limited to heads of organizations; a kingpin is anyone who has supervisory or managerial responsibility with regard to five or more members of the organization. A large organization will contain more than one person with such supervisory responsibilities." *United States v. Pino–Perez,* 870 F.2d 1230, 1236 (7th Cir.), *cert. denied,* 493 U.S. 901, 110 S.Ct. 260, 107 L.Ed.2d 209 (1989).

To support a CCE conviction, the government must prove that the defendant:

(1) committed a predicate offense by violating one of certain specified drug laws (2) as part of a continuing series of drug law violations, (3) committed while acting in concert with five or more persons (4) over whom the defendant exercised managerial or supervisory control, and (5) from which the defendant obtained substantial income or resources.

21 U.S.C. § 848(c)(2) (Supp.1993); *United States v. Bafia,* 949 F.2d 1465, 1470 (7th Cir.1991), citing *United States v. Sophie,* 900 F.2d 1064, 1077 (7th Cir.), *cert. denied,* 498 U.S. 843, 111 S.Ct. 124, 112 L.Ed.2d 92 (1990). Herrera–Rivera contends that the government has failed to prove the fourth and fifth elements of this charge.

Regarding the fourth element, the record supports the jury finding that the defendant organized, supervised, or managed at least five other persons. "It is not essential that such relationships have existed at the same moment in time." *United States v. Mannino,* 635 F.2d 110, 116 (7th Cir.1989). In fact, the government presented evidence identifying eight individuals whom Herrera–Rivera organized, supervised, or managed: Gabriel Alvarez, Juan Rivera, Juan Manuel–Herrera–Medina, Leovigilda Rivera, Enrico Hernandez, an unnamed woman at the Alacrancita restaurant who answered the phone and took messages for the defendant, an unidentified man who served as a lookout during the April 2, 1985 transaction, and an unidentified man present at the April 10, 1985 transaction. The jury only had to believe the evidence with regard to five of these individ-

uals. Because the defendant does not specifically challenge or question any of the specific evidence introduced in regard to each of these individuals, we find it unnecessary to review the many facts and details showing how the defendant organized, supervised, or managed these persons in the course of the conspiracy.

The record also supports the jury finding that Herrera–Rivera derived substantial income or resources from the transactions. Defendant suggests that if one concludes that he sold controlled substances to Agent Lopez, the evidence regarding these numerous transactions shows that the defendant was only following the directions of his superior, Rudolpho Herrera–Medina, and was not himself a kingpin of the operation. Defendant argues that any of the alleged payments made to him in exchange for drugs were immediately forwarded to Rudolpho. Thus if the defendant did not retain the drug proceeds, then he argues he did not obtain substantial income or resources from the drug transactions.

 On the fifth element of the CCE charge, the statute states "from which such person obtains substantial income or resources." 21 U.S.C. § 848(c)(2)(B) (Supp. 1993). The government may prove that the defendant derived substantial income or resources from the operation through the use of circumstantial evidence. *United States v. Smith,* 918 F.2d 1501, 1513 (11th Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 151, 116 L.Ed.2d 117 (1991). "Resources" is not defined in the statute and thus is to be interpreted according to its ordinary, contemporary, and common meaning. *Id.* Money or drugs are both "resources" within the meaning of the statute. *Id.* Here the evidence showed that Agent Lopez paid defendant approximately $130,000 in cash during the fourteen transactions that involved almost

ten pounds of controlled substances. A jury could reasonably infer that Herrera–Rivera "obtained" substantial resources, either in the form of cash or drugs, from the enterprise. *See United States v. Graziano,* 710 F.2d 691, 697 (11th Cir.1983), *cert. denied,* 466 U.S. 937, 104 S.Ct. 1910, 80 L.Ed.2d 459 (1984); *Smith,* 918 F.2d at 1514.

### III. Sentencing

The jury found Herrera–Rivera guilty of participating in both a conspiracy and a continuing criminal enterprise. Judge Kocoras then sentenced the defendant to twenty years on the conspiracy count and twenty-five years on the CCE count running concurrently.

 Conspiracy is a lesser included offense of a CCE charge and concurrent sentences may be imposed for conspiracy and CCE convictions provided that the defendant does not receive cumulative penalties. *Bafia,* 949 F.2d at 1473. Based on a decision of this court vacating the sentence of one of Herrera–Rivera's co-defendants, Castrellon, *Alvarez,* 860 F.2d at 830–31, the defendant argues that we also should vacate his sentence because, as in *Alvarez,* there exists "the distinct possibility that the district court may have considered the defendant's guilt on the conspiracy conviction in sentencing him on the CCE conviction." Defendant does not explain his argument beyond this statement, and relies solely on our previous decision in *Alvarez.*

 A defendant may be convicted for both conspiracy and CCE under the same facts without violating the Fifth Amendment's Double Jeopardy Clause. *United States v. Bond,* 847 F.2d 1233, 1238 (7th Cir.1988).[4] However, the court may never impose cumulative penalties (double punishment). *United States v. Jeffers,* 432 U.S.

---

4. CCE and conspiracy, while not the same, are similar crimes. Both punish agreements to commit crimes (such as running a drug enterprise); CCE, unlike conspiracy, also punishes the agreement's success. Most important, CCE, like an ongoing conspiracy, involves continuing conduct. Thus, there is no reason not to apply to a CCE conviction the general principle that an increased penalty may apply to a continuing

crime.... [But] the district judge should keep in mind that he may not take the conspiracy conviction into account when sentencing [the defendant] on the CCE count. The judge may impose a [separate,] concurrent prison sentence for the conspiracy count.
*United States v. Pace,* 898 F.2d 1218, 1238 (7th Cir.), *cert. denied,* 497 U.S. 1030, 110 S.Ct. 3286, 111 L.Ed.2d 795 (1990).

137, 157, 97 S.Ct. 2207, 2219, 53 L.Ed.2d 168 (1976). Concurrent sentences under § 846 (conspiracy) and § 848 (CCE) are permissible, *Bafia*, 949 F.2d at 1473, "provided the cumulative punishment does not exceed the maximum under the CCE Act." *Bond*, 847 F.2d at 1239. Here the district court sentenced Herrera–Rivera to twenty-five years imprisonment on the CCE charge and twenty years imprisonment on the conspiracy charge, both sentences ordered to run concurrently. At the time of Herrera–Rivera's sentencing, the maximum penalty for violating the CCE charge was life imprisonment. Thus the district judge did not impose a cumulative penalty through the concurrent sentences.

Herrera–Rivera's co-defendant, Mr. Castrellon, was convicted of several offenses including a conspiracy count, RICO count, and a CCE count. He was originally sentenced to two thirty-year sentences running concurrently. The district court imposed the first thirty-year sentence for the conspiracy and RICO convictions and the second for the CCE conviction. On remand Judge Kocoras clarified Castrellon's sentence: "there was no additional punishment imposed for the conspiracy count, and the CCE punishment was not enhanced by virtue of the conspiracy conviction," thus removing any substantial doubt found in the *Alvarez* record. Herrera–Rivera identifies nothing in the record to distinguish his case from Castrellon's, and the record otherwise does not cause us to doubt the propriety of the sentence imposed by the district court.

For the foregoing reasons we affirm the conviction and sentencing of Herrera–Rivera on all counts.

AFFIRMED.