**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Timothy L. GIBBS, Defendant–Appellant.**

**No. 94–2736.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 24, 1995.

Decided July 27, 1995.

Kit R. Morrissey, Asst. U.S. Atty. (argued), Randy G. Massey, Office of U.S. Atty., Crim. Div., Fairview Heights, IL, for plaintiff-appellee.

Daniel R. Schattnik, Unsell, Unsell & Schattnik, East Alton, IL (argued), for defendant-appellant.

Before POSNER, Chief Judge, and BAUER and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

In a multi-count indictment, the government charged Timothy L. Gibbs with supervising a vast marijuana distribution network in St. Clair County, Illinois. According to the government, Gibbs purchased large quantities of marijuana from sources in Arizona and, using various associates, transported the marijuana to Illinois, where he and his associates proceeded to package and distribute the drug. After hearing testimony from more than 120 witnesses during a lengthy trial, a jury convicted Gibbs of, *inter alia*, engaging in a continuing criminal enterprise ("CCE") in violation of 21 U.S.C. § 848. The district court subsequently sentenced Gibbs to 480 months in prison and imposed a fine of $15,000. Gibbs argues in this appeal that the government's evidence at trial was insufficient to support his CCE conviction in that the evidence failed to show that he organized or managed at least five other persons in connection with the criminal enterprise. He also raises two challenges to his sentence. For the reasons that follow, we affirm.

I.

Gibbs first argues that the evidence was insufficient to support his conviction for engaging in a continuing criminal enterprise. Gibbs bears a heavy burden to succeed on such a claim, as we review the record in the light most favorable to the government to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 316, 99 S.Ct. 2781, 2787–88, 61 L.Ed.2d 560 (1979) (emphasis in *Jackson*); *see also United States v. Johnson–Dix,* 54 F.3d 1295, 1302 (7th Cir.1995). We will reverse a defendant's conviction for insufficient evidence "only if the record is devoid of evidence from which the jury could reach a finding of guilt." *Johnson–Dix,* 54 F.3d at 1302; *see also United States v. Herrera–Rivera,* 25 F.3d 491, 498 (7th Cir.1994).

The government must prove the following five elements to sustain a CCE conviction:

(1) a violation of the federal narcotics laws; (2) which crime is a part of a series of violations of the federal narcotics laws; (3) undertaken by the defendant and at least five other individuals; (4) with respect to whom the defendant holds a supervisory, managerial, or organizational role; and (5) from which the defendant receives substantial income or resources.

*United States v. Moya–Gomez,* 860 F.2d 706, 745 (7th Cir.1988), *cert. denied,* 492 U.S. 908, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989); *see also* 21 U.S.C. § 848(c); *Garrett v. United States,* 471 U.S. 773, 781, 105 S.Ct. 2407, 2412–13, 85 L.Ed.2d 764 (1985); *Herrera–Rivera,* 25 F.3d at 498. Gibbs argues that the third and fourth elements were not met here in that the government failed to demonstrate that he acted in concert with five or more persons over whom he exercised a supervisory, managerial, or organizational role.

The government maintains, however, that its evidence at trial was sufficient to prove that Gibbs supervised, managed, or organized at least the following ten individuals: Shawn Bahorich, David Sullivan, Terry Gibson, Frank Kirkwood, Thomas Roper, Mi-

chael Gibbs, Keith Gibbs, Steve Gibbs, Brian Gibbs, and Karrie Dinney. The jury is not required to agree on the identity of the five individuals who a defendant managed or supervised; instead, each juror need only conclude that the defendant managed or supervised at least five other persons. *Herrera–Rivera*, 25 F.3d at 497; *United States v. Bond*, 847 F.2d 1233, 1237–38 (7th Cir.1988); *United States v. Markowski*, 772 F.2d 358, 364 (7th Cir.1985), *cert. denied*, 475 U.S. 1018, 106 S.Ct. 1202, 89 L.Ed.2d 316 (1986). The government need not show, moreover, " 'that the five acted in concert with each other, that the defendant exercised the same kind of control over each of the five, or even that the defendant had personal contact with each of [them].' " *Moya–Gomez*, 860 F.2d at 746 (quoting *United States v. Possick*, 849 F.2d 332, 335–36 (8th Cir.1988)); *see also United States v. Bafia*, 949 F.2d 1465, 1471 (7th Cir.1991), *cert. denied*, 504 U.S. 928, 112, S.Ct. 1989, 118 L.Ed.2d 586 (1992). It need only show that the defendant exerted some type of influence over five other individuals in the course of the criminal enterprise. *Moya–Gomez*, 860 F.2d at 746.

We need not set out the government's evidence in detail to find it sufficient to establish that Gibbs held a supervisory, managerial, or organizational role with respect to at least five of the ten individuals named. Although Gibbs contends that certain of the individuals were not under his control and were instead involved in buying and selling marijuana on their own account, a reasonable jury could conclude that each of the ten had acted in concert with Gibbs and that each had been under his supervision or control. The various couriers, for example, each took their direction, either directly or indirectly, from Gibbs himself, and Gibbs paid all expenses for courier trips to and from Arizona. The various sellers, moreover, sold marijuana fronted to them by Gibbs, and the sellers then paid Gibbs a set price after a sale. Such evidence is sufficient to show management or supervision. *See, e.g., Moya–Gomez*, 860 F.2d at 748.

Gibbs argues nonetheless that even if he managed or supervised at least five other persons over the course of the conspiracy, the evidence still was insufficient because much of the government's case focused on his operation of a courier service that brought marijuana to Illinois from suppliers in Arizona. Gibbs contends that because the various couriers traveled to Arizona at different times, they constituted only a series of replacements as opposed to separate cogs in a larger, ongoing courier network. Gibbs therefore argues that the sum of the various couriers should be considered only as a single person under the CCE statute. Gibbs relies in that regard on the following language from our decision in *United States v. Bond:*

> Now the [CCE] statute aims at criminal organizations. A small time dope dealer who keeps to himself and has a single mule to smuggle the drug into the country is outside the statute's scope. The dealer's need to replace his aide (because of arrests or the difficulty of getting good help in the business) would not authorize a CCE prosecution on the theory that the small-timer had one servant in January, a second in February, a third in March, and so on. The organization would never be larger than two.

847 F.2d at 1237.

It is clear here, however, as it was in *Bond*, that Gibbs' criminal enterprise "was not a two-bit show" involving only a single courier in addition to the supervising dealer himself. *Id.* at 1237. Gibbs' organization was much larger than that; it involved at least five individuals at nearly all times, including almost every member of Gibbs' family. Moreover, many of the participants performed a variety of different functions within the organization over time. Many of the couriers, for instance, participated throughout the course of the conspiracy and were involved as well in the packaging and distribution of the marijuana once it arrived in Illinois. Furthermore, each trip to Arizona generally involved more than a single courier. Indeed, some trips involved two couriers in addition to Bahorich and Sullivan, who under Gibbs' direction helped to facilitate the sale.

To the extent Gibbs is suggesting, through his reliance on *Bond*, that the government failed to prove supervision of at least five individuals simultaneously, it is clear under

our case law that no such showing is required. *See, e.g., Herrera–Rivera,* 25 F.3d at 498; *Bafia,* 949 F.2d at 1470–71; *Moya–Gomez,* 860 F.2d at 746. Indeed, in *Bafia,* we rejected a nearly identical argument based on the same language from *Bond,* noting that *Bond* itself holds that "action in concert with five persons simultaneously is not required." 949 F.2d at 1471 (citing *Bond,* 847 F.2d at 1237). It is enough under *Bond* that the defendant at various times managed or supervised at least five other persons so long as it is clear that no one of the five merely replaced one of the others. *See Bond,* 847 F.2d at 1237.[1] Even if one or more of the couriers here could be characterized only as replacements (a suspect assumption when the other, ongoing activities of the various couriers is considered), Gibbs' criminal enterprise still was comprised of at least five individuals—that is, a chief lieutenant (Bahorich), one or more couriers, and three or more packagers and distributors. The government's evidence was therefore sufficient to sustain Gibbs' CCE conviction.

## II.

■ Gibbs also raises two challenges to his sentence, both of which require only limited discussion. Gibbs first maintains that the district court committed clear error by adding two points to his base offense level for obstruction of justice under U.S.S.G. § 3C1.1. That section authorizes a two-point enhancement "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. The government urged the enhancement here because after Gibbs was arrested, he telephoned Thomas Roper and instructed him to recover approximately

$113,000 that Gibbs had hidden in a Pac Man machine in his home. Roper complied with Gibbs' request, giving $2,000 to Gibbs' girlfriend and $10,000 to Gibbs' first lawyer while hiding the remainder. The district court found that Gibbs had attempted to obstruct justice by instructing Roper to remove the money from the Pac Man machine:

> Well, I think it's clear both from the evidence at the trial and the testimony this morning that the defendant asked Mr. Roper to remove the money from the Pac Man machine. Clearly some of it was used to provide attorneys, but I think it would strain logic to believe that the remainder, that Mr. Gibbs asked Mr. Roper to remove the remainder in order for it to be turned over to the government or for it to be donated to some charity or to be used for some purpose of that nature. The only reasonable inferences that can be drawn from the conversations and subsequent activities of both the defendant and Roper are that they wanted—the defendant wanted to remove that money. I doubt that he knew that was an element necessary for the government to show substantial assets in order to obtain a CCE conviction, but I am sure he knew that was subject to being forfeited, and for that reason it had been removed. But the fact of the matter is, the substantial assets are an element of CCE and I think clearly here the defendant was attempting to obstruct justice and did, in fact, do so for a certain period of time.

(July 14, 1994 Tr. at 24–25.)

We review the district court's obstruction finding for clear error (*Johnson–Dix,* 54 F.3d at 1312) and find none here. The district court's finding was supported both by the trial evidence and by the evidence adduced at

---

1. Gibbs has not challenged the following instruction to the jury on this issue:

    To sustain the third element of a continuing criminal enterprise, the government must prove beyond a reasonable doubt that the defendant committed those violations in concert with five or more persons. It is not required that the five or more persons be engaged with the defendant in the commission of the continuing series of violations at the same moment or that all five were present at the same time or that all five were present at the same place. It is not required that the defendant acted in concert with five or more persons in the commission of any single offense that is one of the series of offenses constituting the continuing criminal enterprise. For purposes of this element, it is sufficient if it is proven that during the course of the commission of the continuing series of violations, the defendant supervised, managed, or organized a total of five or more persons.

    (Govt. Instr. 18.) *Cf. Bafia,* 949 F.2d at 1481–82 (Posner, J., concurring and dissenting) (defendant challenged district court's refusal to instruct jury on use of replacements).

the sentencing hearing. It was not clearly erroneous. *See* U.S.S.G. § 3C1.1, App. Note 3(d); *United States v. Brown,* 944 F.2d 1377, 1383 (7th Cir.1991) (affirming obstruction enhancement where defendant gave approximately $35,000 to a friend "for safekeeping" upon learning of a government investigation); *see also United States v. Curtis,* 37 F.3d 301, 308 (7th Cir.1994) (affirming obstruction enhancement for a defendant who received drug proceeds from an individual under criminal investigation and then concealed the existence of the proceeds), *cert. denied,* — U.S. —, 115 S.Ct. 1110, 130 L.Ed.2d 1075 (1995).

■ Gibbs also argues that the district court erred in imposing a $15,000 fine as part of his sentence due to his limited financial resources and earning capacity. That fine, however, represented a downward departure from the minimum fine of $25,000 called for by U.S.S.G. § 5E1.2(c)(3). The district court found that Gibbs' financial condition made it unlikely that he would be able to pay the $25,000 minimum fine but that he "reasonably [could] be expected to pay a fine in the amount of $15,000, which may be paid from prison earnings or while [he] is on supervised release." (July 14, 1994 Tr. at 60.) We held in *United States v. Gomez,* 24 F.3d 924, 927 (7th Cir.), *cert. denied,* — U.S. —, —, 115 S.Ct. 280, 281, 130 L.Ed.2d 196, 198 (1994), that prison wages are available to pay fines and that the extent of any departure from the minimum fine set by Guidelines section 5E1.2(c)(3) is a matter committed to the discretion of the district court. *See also United States v. Burrows,* 48 F.3d 1011, 1019 (7th Cir.) (affirming fine based on indigent defendant's ability to earn money while in prison), *cert. denied,* — U.S. —, 115 S.Ct. 2632, 132 L.Ed.2d 872 (1995). We are therefore without authority to review Gibbs' claim that the district court's departure from the minimum fine was not significant enough. *Gomez,* 24 F.3d at 927.

We thus affirm Gibbs' convictions and sentence.

AFFIRMED.